■ In the Matter of MARGARITA VILLAFANE, Respondent, v ANTONIA CABAN, Appellant, et al., Respondents. — Appeal from a judgment of the Supreme Court, Kings County (Meyerson, J.), dated August 20, 1984, which declared invalid certain designating petitions naming appellant, Antonia Caban, as a candidate for the party position of Female Member of the Democratic State Committee from the 51st Assembly District, Kings County, in the Democratic Party primary election to be held on September 11, 1984.

Judgment affirmed, without costs or disbursements.

On July 24, 1984 the Central Brooklyn Independent Democrats (CBID) filed a petition with the Board of Elections which designated, among others, appellant Caban for the position of Female Member of the Democratic State Committee from the 51st Assembly District, Kings County. The petition, consisting of two volumes, contained 1,701 signatures. Thereafter, on July 26, 1984, the Hispanic Democratic Club of Sunset Park (HDC) filed another petition with the Board of Elections which similarly designated Caban for the same position. This second petition contained 1,175 signatures and was filed as a single volume. Both petitions contained the same committee to fill vacancies, the members of which were chosen by the Caban and her campaign manager.

A special proceeding under section 16-102 of the Election Law was thereafter commenced by petitioner Villafane who sought to invalidate all petitions purportedly designating Caban. At the hearing before Special Term, Caban's HDC designating petition was compared to the designating petition filed on behalf of Raymond Rodriguez, a candidate for the Democratic nomination for Member of the Assembly, 51st Assembly District. Twenty-six pages of Caban's HDC petition were found to be identical to the Rodriguez petition, except for the fact that they had different dates and different subscribing witnesses. Special Term (Meyerson, J.) found that the comparison was indicative of "a pattern of fraud in placing the signatures on the pages". It further found that Caban had involved herself in the tainted petitioning process of her organization and it therefore invalidated all of her petitions notwithstanding the presence of the required number of valid signatures, stating that by being a participant in the fraudulent petitioning process, Caban had forfeited her place on the ballot. Additionally, the court found that the level of fraud

involved was of such magnitude so as to permeate the petition as a whole. Although it was stipulated that there were no irregularities in Caban's CBID petition, the court found that the fact that both the CBID and the HDC petitions contained the same committee to fill vacancies showed an intent on the part of Caban to treat the petitions as one. Thus, the permeation of the HDC petition with fraud spread to the CBID petition as well.

We are in agreement with Special Term. Although Caban attempted at trial to distance herself from the fraudulent petition, the facts indicated that she was closely involved in the petitioning process. She went to her political club approximately every three days and spoke frequently with her campaign manager about her petitions. She attended meetings concerning the petitioning process and was involved in discussions with petitioner with respect to where and how to obtain signatures. She chose the committee to fill vacancies in conjunction with her campaign manager. At trial, Caban admitted that toward the end of July she looked at the petitions "out of curiosity". She also admittedly helped to file the petitions with the Board of Elections. It is to be noted that two of the perpetrators of the fraud involved herein were not mere volunteers remotely associated with the campaign, but rather were Caban's campaign manager himself and a security official of Caban's who was one of the persons named in her committee to fill vacancies. It is clear from the record herein that Caban was inextricably intertwined in the petitioning process. "[W]here a candidate actively aids, abets and participates in the presentment of petitions containing forgeries [s]he forfeits h[er] right to a place on the ballot and h[er] entire petition is invalid, notwithstanding the presence of the required number of valid signatures" (*Matter of Giaccio v Cappa*, NYLJ, May 26, 1960, p 15, cols 6-7, affd 10 AD2d 998). Thus, Special Term was correct in invalidating all of Caban's designating petitions and removing her name from the ballot.

Moreover, even if Caban had not forfeited her place on the ballot because of her involvement in the fraudulent petitioning process, permeation of the HDC petition with fraud would invalidate not only that petition but all of Caban's petitions as a whole (*Matter of Proskin v May*, 40 NY2d 829; *Lerner v Power*, 22 NY2d 767). Although the CBID petition was filed separately, it too became tainted by the fraud. It is clear that Caban's intent in filing the CBID petition and the HDC petition with the identical committee to fill vacancies was to have them considered as a single petition for the benefit of her candidacy (see *Frawley v Regan*, 77 AD2d 937). Accordingly, the systematic fraudulent activities of Caban's organization justifies the invali-

dation of all designating petitions filed on her behalf. Weinstein, J. P., Brown, Boyers and Eiber, JJ., concur.